Mario Iskander, SBN #327025
JUSTICE LAW GROUP
1111 N. Brand Blvd Suite 308
Glendale CA 91202
Tel. (240) 439-1970
Email mario@iskanderlaw.com

Attorney for Plaintiff NIMA ASADI and the Proposed Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NIMA ASADI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOP C GROUP LLC, a Delaware limited liability company, d/b/a NOVACARE and NOVACARE MEDICAL LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violations of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, et seq.);<br>(2) False Advertising (Cal. Bus. & Prof. Code §§ 17500, et seq.);<br>(3) Unfair Competition (Cal. Bus. & Prof. Code §§ 17200, et seq.);<br>(4) Fraud / Intentional Misrepresentation;<br>(5) Negligent Misrepresentation;<br>(6) Breach of Express Warranty; and<br>(7) Unjust Enrichment.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nima Asadi ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, brings this Class Action Complaint against Defendant Top C Group LLC d/b/a NovaCare and NovaCare Medical LLC ("Defendant" or "NovaCare"), and Does 1 through 10, and alleges as follows upon personal knowledge

as to Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief based on the investigation of counsel:

## I. NATURE OF THE ACTION

1. This is a consumer class action arising from the deceptive marketing and sale of the "NovaCare One-Button Anti-Choking Device" (the "Product"), an inexpensive spring-loaded suction device that Defendant sells directly to consumers through the websites novacareus.com, novacareca.com, and novacare-official.com.

2. Defendant markets the Product as a German-engineered, "Made in Germany" precision medical device. That representation is false. By Defendant's own admission on the "Regulatory Notice" page of its website, the Product is manufactured by "Yiwu Medical Pro Products Co., Ltd." in "Yiwu, Zhejiang Province, China," which Defendant's own page identifies as a "Foreign Exporter, Manufacturer." Defendant's order-tracking records further reflect that the Product is shipped from China through the Chinese cross-border carrier Yanwen.

3. Defendant also represents that the Product is an "FDA registered" medical device, thereby conveying the false and misleading impression that the United States Food and Drug Administration ("FDA") has reviewed, tested, cleared, approved, or endorsed the Product. It has not. As the FDA itself publicly states, the FDA does not issue device "registration certificates," and registration and listing "does not denote approval, clearance, or authorization" of a device. Defendant's own webpages are internally inconsistent as to the Product's regulatory status, variously describing it as a "Class I" and a "Class II" device and citing conflicting FDA establishment and regulation numbers.

4. Defendant further saturates its website with fabricated consumer testimonials, five-star ratings, and a running "lives saved" / "Real Saves by NovaCare" counter depicting specific, named infants and toddlers purportedly rescued by the Product. On information and belief, these testimonials and "life saved" narratives are fabricated, are not genuine

reviews by actual verified consumers, and employ stock or artificially generated imagery, in violation of, among other things, the Federal Trade Commission's Trade Regulation Rule on the Use of Consumer Reviews and Testimonials, 16 C.F.R. Part 465.

5. Finally, Defendant's core efficacy representations---that the Product delivers, at the press of "one button," a cleared airway in "3 seconds," with "no training" and "no thinking" required---are unsubstantiated and dangerous. Peer-reviewed scientific literature concludes that the comparative effectiveness of anti-choking suction devices remains unproven, and public-health authorities warn that reliance on such a device can dangerously delay proven, first-line life-saving measures such as back blows and abdominal thrusts.

6. Plaintiff purchased the Product in reasonable reliance on Defendant's representations, including its representation that the Product was of German origin. Plaintiff would not have purchased the Product, or would have paid substantially less for it, had he known the truth. Plaintiff and the Class have suffered injury in fact and lost money as a result of Defendant's misconduct.

7. Plaintiff brings this action individually and on behalf of a class of California consumers who purchased the Product, and seeks restitution, damages, injunctive relief (including public injunctive relief), and other appropriate relief under the Consumers Legal Remedies Act, the False Advertising Law, the Unfair Competition Law, and the common law.

## II. PARTIES

8. Plaintiff Nima Asadi is, and at all relevant times was, a citizen of the State of California, residing in Orange County, California, within this District.

9. Defendant Top C Group, LLC is a limited liability company organized and existing under the laws of the State of Wyoming, with a principal place of business in Wilmington, Delaware. Top C Group LLC does business as "NovaCare" and, on its

website, also identifies itself and/or an affiliated entity as "NovaCare Medical LLC." Top C Group LLC owns and operates the websites novacareus.com, novacareca.com, and novacare-official.com, through which it advertises, markets, and sells the Product to consumers throughout California and the United States. For purposes of the Class Action Fairness Act, and pursuant to 28 U.S.C. § 1332(d)(10), Defendant is a citizen of the State of Wyominge and the State of Delaware2010. "NovaCare Medical LLC" is a name under which Defendant advertises, markets, distributes, and sells the Product. To the extent NovaCare Medical LLC is a separate legal entity, Plaintiff alleges that it is the alter ego of, is under common ownership and control with, and/or acts in concert with Top C Group LLC, such that the two entities are jointly and severally liable for the conduct alleged herein. Plaintiff will amend this Complaint to allege the precise corporate relationship once ascertained.

11. Defendants Does 1 through 10 are persons or entities whose true names and capacities are presently unknown to Plaintiff, who therefore sues them by fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each fictitiously named Defendant is responsible in some manner for the conduct alleged herein.

12. At all relevant times, each Defendant was the agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the other Defendants, and in doing the acts alleged herein was acting within the course and scope of that relationship and with the knowledge, permission, consent, and/or ratification of the other Defendants.

## III. JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The proposed Class consists of at least 100 members; the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and at least one member of the proposed Class---including Plaintiff---is

a citizen of a State different from that of Defendant, thereby satisfying the minimal-diversity requirement.

14. This Court has personal jurisdiction over Defendant because Defendant purposefully directs its advertising, marketing, and sales activities into California and this District, transacts substantial business in California, sold and shipped the Product to California consumers (including Plaintiff), and has caused the injuries alleged herein within California. The claims alleged arise directly out of Defendant's California-directed conduct.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's exposure to Defendant's advertising and Plaintiff's purchase and receipt of the Product. Plaintiff resides in this District (Orange County), where he received the Product, and Defendant transacts business and has sold the Product to numerous consumers in this District.

## IV. FACTUAL ALLEGATIONS

### *A. The Product and Defendant's Direct-to-Consumer Business Model*

16. The Product is a handheld, spring-loaded suction device marketed as an emergency device for clearing a choking victim's airway. Defendant sells the Product exclusively through its own e-commerce websites, principally novacareus.com, at a price of approximately $69.99 per unit, with discounted multi-unit "bundle" offers and related upsells.

17. On information and belief, Defendant does not manufacture the Product. Instead, Defendant imports generic spring-suction anti-choking devices manufactured in China and resells them directly to consumers under the "NovaCare" brand. The novacareus.com domain was registered on or about January 31, 2026---only months before Plaintiff's purchase---consistent with a direct-to-consumer "drop-shipping" operation.

### *B. The False "Made in Germany" Origin Representation*

18. In its advertising and marketing of the Product---including, on information and belief, in paid video and social-media advertisements and product presentations---Defendant represents, expressly and by implication, that the Product is of German origin, is "Made in Germany," and/or is "German-engineered." These representations convey to reasonable consumers that the Product is manufactured in Germany and possesses the quality, precision, and safety associated with German-engineered medical devices.

19. These origin representations are false. By Defendant's own admission on the "Regulatory Notice" page of novacareus.com, the "NovaCare Anti-Choking Device is manufactured by Yiwu Medical Pro Products Co., Ltd.," located in "Yiwu, Zhejiang Province, China," whose operation Defendant describes as "Foreign Exporter, Manufacturer." Defendant's "Legal Disclaimer" page likewise identifies "Yiwu Medical Pro Products Co., Ltd." as the manufacturer. The Product is thus manufactured in China, not Germany.

20. Defendant's own order-tracking records confirm that the Product is fulfilled from China: shipments are processed through the Chinese cross-border logistics carrier Yanwen, reflecting an "International shipment release---Export" from China before entering the United States.

21. A product's country of origin is material to reasonable consumers, particularly for a purported precision medical or safety device where "German engineering" is invoked as a signal of superior quality, reliability, and safety. Reasonable consumers, including Plaintiff, attach significance to whether such a device is made in Germany rather than mass-produced in China.

### *C. The Deceptive "FDA Registered" Representation*

22. Defendant markets the Product as "FDA registered," and displays FDA-related registration information in a manner that conveys to reasonable consumers that the FDA has reviewed, tested, cleared, approved, or endorsed the Product's safety and effectiveness.

23. That impression is false and misleading. FDA "registration" and "listing" are ministerial steps that do not entail any FDA review, testing, clearance, approval, or endorsement of a device or its efficacy. As the FDA publicly states, it "does not issue any type of device registration certificates," and registration and listing "does not denote approval, clearance, or authorization" of a device; firms that display such information to imply FDA approval misbrand the device in violation of the Federal Food, Drug, and Cosmetic Act.

24. Defendant's own webpages are internally inconsistent regarding the Product's regulatory status. Defendant variously describes the Product as a "Class I" medical device (on its legal and regulatory pages) and as a "Class II" medical device (in its marketing blog content); cites two different FDA establishment registration numbers (3029917415 and 3029917488); and cites two different regulation numbers (21 C.F.R. § 868.6809 and § 868.6810). These inconsistencies underscore the deceptive and unreliable nature of Defendant's regulatory representations.

25. Plaintiff's claims concerning Defendant's FDA-registration representations are claims of consumer deception---they challenge Defendant's misleading communications to consumers, not any matter committed to the FDA. The Product is, at most, a Class I device subject only to general controls; no specific federal requirement attaches to it that could displace California's consumer-protection or common-law duties, and Plaintiff's claims are moored in traditional state law prohibiting deceptive advertising.

***D. Fabricated Reviews, Testimonials, and "Lives Saved"***

26. Defendant's websites prominently feature purported consumer testimonials under headings such as "Real Families. Real Stories.," attributed to individuals such as

"Linda & Paul W.," "Robert K." (identified as a "former EMT"), and "Jessica M.," each accompanied by five-star ratings and photographs of families.

27. Defendant also displays a running "Real Saves by NovaCare" / "Life Saved Stories" counter (e.g., "0176 lives protected by NovaCare"), together with dated narratives describing specific named infants and toddlers purportedly saved from choking by the Product.

28. On information and belief, these testimonials, ratings, and "life saved" narratives are fabricated; they are not genuine reviews or accounts by actual, verified consumers with bona fide experience with the Product; they employ stock and/or artificially generated imagery and text; and no verifiable news, emergency-medical, or medical record substantiates the specific "lives saved" that Defendant claims.

29. The FTC's Trade Regulation Rule on the Use of Consumer Reviews and Testimonials, 16 C.F.R. Part 465, effective October 21, 2024, prohibits, among other things: creating, selling, or disseminating consumer reviews or testimonials that misrepresent that they are by persons who do not exist or who lack actual experience with the product (16 C.F.R. § 465.2), including AI-generated fake reviews; providing compensation or incentives conditioned on reviews expressing a particular sentiment (§ 465.4); undisclosed "insider" reviews by a business's officers, managers, employees, or agents (§ 465.5); and review suppression and misrepresenting that displayed reviews reflect all reviews when negative reviews are withheld (§ 465.7). On information and belief, Defendant's conduct violates these prohibitions.

***E. Unsubstantiated and Dangerous Efficacy and Safety Claims***

30. Defendant markets the Product with unqualified efficacy claims, including "One Button. One Second. One Life," "One Button. 3 Seconds. Airway Clear," and "No training. No thinking. Just press," conveying that the Product reliably and near-instantaneously clears a choking victim's airway without skill or training.

31. These headline claims are contradicted by Defendant's own fine print, which concedes that the Product is merely a "supplemental airway clearance tool to be used while awaiting emergency medical services," that it is "not guaranteed effective," and that its effectiveness "depends on proper usage, adequate facial seal, and individual factors including age, facial anatomy, and presence of facial hair."

32. Defendant's unqualified efficacy claims are unsubstantiated. Peer-reviewed scientific literature---including a 2025 systematic review and meta-analysis---concludes that the comparative effectiveness of anti-choking suction devices versus traditional techniques "remains unproven" and is supported only by "limited" evidence "affected by bias," and that traditional techniques "should remain the priority." Public-health authorities similarly warn that reliance on such a device can dangerously delay proven first-line interventions.

33. Defendant's efficacy representations are not mere puffery. The claims that the Product clears a choking victim's airway in three seconds and requires no training are specific, measurable, and objectively verifiable representations of performance and safety. At the time Defendant made these claims, Defendant possessed no competent and reliable scientific or clinical evidence substantiating them, and the claims are false or misleading.

***F. The Representations Are Material and Unambiguous and Are Not Cured by Fine Print or Regulatory Status***

34. Defendant's representations regarding the Product's origin, FDA status, consumer endorsements, and efficacy appear prominently and unambiguously in Defendant's advertising and on its websites, without any qualifying language appearing on the same screen or display surface. Reasonable consumers are not required to hunt through separately located legal-disclaimer or regulatory-notice webpages to discover contradictory fine print, and no such fine print cures the prominent, affirmative misrepresentations Defendant uses to induce the sale.

35. Each challenged representation is material. A reasonable consumer would attach importance to whether a purported precision medical safety device is made in Germany or in China, whether it has been approved or cleared by the FDA, whether the testimonials and lives-saved accounts are genuine, and whether the device actually performs as advertised in a life-threatening emergency. Defendant's conduct is not affirmatively authorized or permitted by any statute or regulation, and no regulatory safe harbor shields it.

***G. Plaintiff Asadi's Purchase and Reliance***

36. On or about July 12, 2026, Plaintiff purchased the Product from Defendant through novacareus.com in a two-unit order (order no. 9534; tracking no. UL324436368YP) that also included accessory masks, a universal guide tube, and a "Lifetime Warranty," for a total of approximately $203.98. Consistent with the Product's Chinese origin, Plaintiff's order shipped internationally---reflecting a "Port of departure -- Departure," an "International shipment release -- Export," and a subsequent "International shipment release -- Import" into the United States---before being delivered to Plaintiff in Irvine, California (Orange County) on or about July 18, 2026.

37. Prior to and at the time of his purchase, Plaintiff was exposed to and reviewed Defendant's representations regarding the Product, including Defendant's representations that the Product was of German origin / "Made in Germany," that it was "FDA registered," and that it was highly effective at clearing a choking victim's airway, and Plaintiff viewed Defendant's consumer testimonials and "lives saved" content.

38. Plaintiff reasonably relied on Defendant's representations, which were material to his decision to purchase the Product. In particular, Plaintiff purchased the Product believing that it was a German-made device.

39. In truth, the Product is manufactured in China, is not FDA-approved or FDA-cleared, and does not perform as advertised. Had Plaintiff known the truth, he would not

have purchased the Product, or would have paid substantially less for it. Plaintiff paid a price premium attributable to Defendant's misrepresentations, and therefore suffered injury in fact and lost money or property as a result of Defendant's misconduct.

40. Plaintiff continues to desire a genuine, accurately described anti-choking safety device and would consider purchasing such a device marketed by Defendant in the future if he could rely on the accuracy of Defendant's representations. Plaintiff cannot presently do so because he cannot determine whether Defendant's origin, regulatory, and efficacy representations are truthful. Plaintiff therefore remains subject to ongoing harm absent injunctive relief.

## V. CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of the following proposed Class:

> All persons who, within the applicable limitations period, purchased the NovaCare One-Button Anti-Choking Device in California for personal, family, or household use and not for resale (the "Class").

42. Plaintiff also seeks to represent a "CLRA Subclass," consisting of all Class members who are "consumers" within the meaning of California Civil Code § 1761(d).

43. Excluded from the Class are Defendant; its officers, directors, employees, agents, and affiliates; the Judge to whom this case is assigned and his or her immediate family and court staff; and all persons who make a timely election to be excluded.

44. Numerosity (Rule 23(a)(1)): The Class is so numerous that joinder of all members is impracticable. On information and belief, Defendant sold the Product to thousands of consumers in California. The precise number is within Defendant's exclusive knowledge and readily ascertainable from Defendant's sales and shipping records.

45. Commonality (Rule 23(a)(2)): There are questions of law and fact common to the Class, including, without limitation: (a) whether the Product is manufactured in China

rather than Germany; (b) whether Defendant represented that the Product is of German origin; (c) whether Defendant's "FDA registered" representations are false or misleading; (d) whether Defendant's testimonials, ratings, and "lives saved" content are fabricated; (e) whether Defendant's efficacy claims are false, misleading, or unsubstantiated; (f) whether Defendant's representations are likely to deceive a reasonable consumer; (g) whether the misrepresentations are material; (h) whether Defendant's conduct violates the CLRA, FAL, and UCL; and (i) the appropriate measure of restitution, damages, and injunctive relief.

46. Typicality (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class. Plaintiff and each Class member were exposed to the same or substantially similar misrepresentations, purchased the same Product, and were injured in the same manner.

47. Adequacy (Rule 23(a)(4)): Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the Class and has retained counsel experienced in complex class-action and consumer-protection litigation.

48. Predominance and Superiority (Rule 23(b)(3)): Common questions predominate over any individualized questions because Defendant's liability turns on uniform, objective representations evaluated under the reasonable-consumer standard, which does not require individualized proof of reliance. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, given the modest individual damages and the impracticability of thousands of individual actions.

49. Ascertainability: The Class is ascertainable. Because Defendant sells the Product directly to consumers through its own e-commerce platform, Defendant maintains order histories, shipping records, and customer contact information sufficient to identify Class members.

50. Rule 23(b)(2): Defendant has acted and refused to act on grounds generally applicable to the Class, making final injunctive and corresponding declaratory relief

appropriate for the Class as a whole. Plaintiff further seeks public injunctive relief on behalf of the general public to enjoin Defendant's continuing deceptive practices.

## VI. CLAIMS FOR RELIEF

### COUNT I

### Violations of the Consumers Legal Remedies Act

### (California Civil Code §§ 1750, et seq.)

51. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

52. The Product is "goods" within the meaning of California Civil Code § 1761(a). Plaintiff and the CLRA Subclass members are "consumers" within the meaning of § 1761(d), and their purchases of the Product are "transactions" within the meaning of § 1761(e).

53. Defendant violated, and continues to violate, the CLRA, Cal. Civ. Code § 1770(a), including by: (2) misrepresenting the source, sponsorship, approval, or certification of the Product (the "FDA registered" representations); (4) representing that the Product has a geographical origin that it does not have (the "Made in Germany" / German-origin representations); (5) representing that the Product has characteristics, uses, or benefits that it does not have (the efficacy and testimonial representations); (7) representing that the Product is of a particular standard, quality, or grade when it is of another; and (9) advertising the Product with intent not to sell it as advertised.

54. Defendant's misrepresentations were material, and Plaintiff and the CLRA Subclass reasonably relied on them to their detriment. As a direct and proximate result, Plaintiff and the CLRA Subclass suffered injury in fact and lost money or property.

55. Pursuant to California Civil Code § 1782, Plaintiff, concurrently with or prior to the filing of this Complaint, served or is serving Defendant with written notice of its CLRA violations by certified mail. Plaintiff seeks injunctive and equitable relief under the

CLRA; if Defendant fails to provide an appropriate correction, repair, replacement, or other remedy within 30 days, Plaintiff will amend this Complaint to seek actual damages, punitive damages, and all other relief available under § 1780.

56. Plaintiff seeks an order enjoining Defendant's unlawful practices, restitution, and, as provided above, damages, together with costs and reasonable attorneys' fees under California Civil Code § 1780.

**COUNT II**

**Violations of the False Advertising Law**

**(California Business & Professions Code §§ 17500, et seq.)**

57. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

58. California's False Advertising Law prohibits any statement made in connection with the sale of goods that is untrue or misleading and that the advertiser knew, or by the exercise of reasonable care should have known, to be untrue or misleading.

59. Defendant made untrue and misleading statements about the Product, including that it is "Made in Germany" / German-engineered, that it is "FDA registered" (implying FDA approval), and that it reliably clears a choking victim's airway in seconds with no training. Defendant knew, or by the exercise of reasonable care should have known, that these statements were untrue or misleading.

60. These statements were likely to deceive, and did deceive, reasonable consumers, including Plaintiff. As a direct and proximate result, Plaintiff and the Class suffered injury in fact and lost money or property. Plaintiff seeks restitution and injunctive relief, including public injunctive relief.

**COUNT III**

**Violations of the Unfair Competition Law**

**(California Business & Professions Code §§ 17200, et seq.)**

61. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

62. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Defendant's conduct violates each prong.

63. Unlawful: Defendant's conduct is unlawful because it violates, among other laws, the CLRA; the FAL; Section 5 of the FTC Act and the FTC's Trade Regulation Rule on the Use of Consumer Reviews and Testimonials (16 C.F.R. Part 465); the Federal Food, Drug, and Cosmetic Act's prohibition on misbranding; and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

64. Unfair: Defendant's conduct is unfair because the harm to consumers substantially outweighs any legitimate business justification, the conduct offends established public policy, and the injury is substantial, not outweighed by any countervailing benefit, and not reasonably avoidable by consumers.

65. Fraudulent: Defendant's conduct is fraudulent because its representations regarding origin, FDA status, testimonials, and efficacy are likely to deceive reasonable members of the public.

66. Plaintiff has standing under Business & Professions Code § 17204 because he lost money or property---the purchase price of the Product---as a result of, and in actual reliance on, Defendant's misrepresentations. Plaintiff seeks restitution, disgorgement, and injunctive relief, including public injunctive relief.

**COUNT IV**

**Fraud / Intentional Misrepresentation**

67. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

68. Defendant made material misrepresentations of fact regarding the Product, including that it is "Made in Germany," that it is "FDA registered" in a manner implying

FDA approval, and that it is highly and reliably effective. Defendant knew these representations were false or made them recklessly without regard for their truth.

69. Defendant made these representations with the intent that consumers, including Plaintiff, rely on them in deciding to purchase the Product. Plaintiff justifiably relied on the representations, and that reliance was a substantial factor in causing his harm. As a direct and proximate result, Plaintiff and the Class suffered damages in an amount to be proven at trial. Defendant's conduct was fraudulent, oppressive, and malicious, entitling Plaintiff to punitive damages.

**COUNT V**

**Negligent Misrepresentation**

70. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

71. In the alternative, Defendant made the representations described above without reasonable grounds for believing them to be true, in a commercial setting intended to induce consumer purchases. Plaintiff justifiably relied on the representations to his detriment and suffered damages as a direct and proximate result.

**COUNT VI**

**Breach of Express Warranty**

**(California Commercial Code § 2313)**

72. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

73. Through its advertising, labeling, and website statements---including that the Product is "Made in Germany," "FDA registered," and clears a choking victim's airway in "3 seconds"---Defendant made affirmations of fact and promises about the Product that became part of the basis of the bargain and created express warranties that the Product would conform to those affirmations and promises.

74. The Product did not conform to Defendant's affirmations and promises, and Defendant thereby breached its express warranties. Plaintiff provided, or is excused from providing, pre-suit notice, including by way of the notice served under Civil Code § 1782. As a direct and proximate result, Plaintiff and the Class suffered damages in an amount to be proven at trial.

**COUNT VII**

**Unjust Enrichment**

75. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

76. In the alternative to Plaintiff's legal claims, and to the extent Plaintiff's remedies at law are inadequate or incomplete, Defendant has been unjustly enriched by its receipt and retention of monies paid by Plaintiff and the Class for the Product, which purchases were induced by Defendant's misrepresentations. It would be inequitable for Defendant to retain the benefit of those payments. Plaintiff and the Class are entitled to restitution and/or disgorgement of the amounts by which Defendant was unjustly enriched.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment against Defendant as follows:

1. Certifying the Class (and CLRA Subclass), appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

2. Declaring that Defendant's conduct violates the CLRA, FAL, and UCL and constitutes fraud, negligent misrepresentation, breach of express warranty, and unjust enrichment;

3. Enjoining Defendant from continuing the unlawful, unfair, fraudulent, and deceptive practices alleged herein, including through public injunctive relief and an order

requiring corrective advertising and truthful disclosure of the Product's country of origin and regulatory and efficacy status;

4. Awarding restitution and disgorgement of all amounts wrongfully obtained by Defendant;

5. Awarding actual, statutory, and punitive damages as permitted by law, including under the CLRA and for fraud;

6. Awarding pre-judgment and post-judgment interest;

7. Awarding reasonable attorneys' fees and costs, including under California Civil Code § 1780 and California Code of Civil Procedure § 1021.5; and

8. Awarding such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

JUSTICE LAW GROUP

Date: September 22, 2026

s/ _______________ /

Mario Iskander, Esq.
attorney for Plaintiff,